GEORGE H. EVERSMAN *v.* JOANNE J. EVERSMAN
(2688)

SPALLONE, DALY and CELOTTO, Js.

Argued May 31—decision released August 6, 1985

*Samuel V. Schoonmaker III,* with whom was *Jonathan D. Elliot,* for the appellant (defendant).

*Robert M. Wechsler,* for the appellee (plaintiff).

CELOTTO, J. The defendant appeals[1] from a judgment dissolving the marriage of the parties and the entry of certain financial orders ancillary thereto.

The plaintiff, who is fifty-five years old, and the defendant, who is fifty-four, were married on December 30, 1950. They have raised three children, none of whom is a minor. The plaintiff is a successful executive in the advertising industry and the defendant has been a homemaker during the marriage. On July 6, 1981, the plaintiff filed a complaint seeking a dissolution of the marriage on the basis of irretrievable breakdown. The defendant denied that the marriage had broken down irretrievably. At trial, both parties presented extensive evidence on this issue. The plaintiff testified that the marriage started to deteriorate "approximately fifteen years ago." The defendant advanced two reasons to support her claim that the marriage had not broken down irretrievably. First, she claimed that she loved her husband. Second, she claimed that the parties had not exhausted the joint exploration of their problems with the assistance of a professional.

Without detailing the testimony of the parties, the trial court stated that "from a complete examination

---

[1] This appeal, originally filed in the Supreme Court, was transferred to this court. General Statutes § 51-199 (c).

of the evidence, the court finds that the plaintiff has sustained his burden of proof that the marriage has irretrievably broken down. The defendant's position that the breakdown is not irretrievable is not realistic or reasonable. The plaintiff, by both his statements and actions, has clearly demonstrated that the marriage is no longer viable. The plaintiff left the defendant approximately three years ago and has other living arrangements and plans for the future." The court also entered a number of financial orders and awards. In doing so, the court noted that it had carefully considered the criteria set forth in General Statutes §§ 46b-81 and 46b-82.

General Statutes § 46b-40 (c) (1) provides that a decree of dissolution of a marriage shall be granted upon a finding that the marriage has broken down irretrievably. The defendant contends that the breakdown of the parties' marriage was not irretrievable. It is well settled that judicial review of a trial court's exercise of its broad discretion in domestic relations cases is limited to the questions of whether the trial court correctly applied the law and could reasonably have concluded as it did. *Holley* v. *Holley,* 194 Conn. 25, 29, 478 A.2d 1000 (1984). Therefore, this court may only consider whether the trial court could reasonably have concluded that the parties' marriage had irretrievably broken down.

The term "irretrievably" is not defined in our statutes. In upholding the constitutionality of General Statutes (Rev. to 1977) § 46-32 (now § 46b-40), insofar as it authorizes a dissolution of marriage upon a finding of irretrievable breakdown, our Supreme Court, in *Joy* v. *Joy,* 178 Conn. 254, 423 A.2d 895 (1979), made the following relevant observation: "Despite the defendant's claims to the contrary, the evidence amply supports the trial court's factual finding of irretrievable breakdown. We decline . . . to circumscribe this deli-

cate process of fact-finding by imposing the constraint of guidelines on an inquiry that is necessarily individualized and particularized. 'Since it is the marriage as a whole which is at issue, any evidence which bears upon the viability of the marriage is admissible, whether it be classified as objective or subjective.' " (Citations omitted.) Id., 255.

The determination of whether a breakdown of a marriage is irretrievable is a question of fact to be determined by the trial court. Id., 255–56; *Flora* v. *Flora,* 337 N.E.2d 846, 850 n.2 (Ind. App. 1975); *Woodruff* v. *Woodruff,* 114 N.H. 365, 367, 320 A.2d 661 (1974). In its memorandum of decision, the trial court saw no need to reiterate the testimony of the parties nor will any purpose be served by doing so here. It is sufficient to note that the plaintiff testified to numerous extramarital affairs and to his belief that the marriage had been deteriorating for approximately fifteen years. He further testified that, at the time of trial, he was living with another woman whom he wished to marry. Finally, the evidence disclosed that while some attempts were made at joint and individual counselling in 1981, those efforts proved unsuccessful.

The fact that the defendant maintains hope for reconciliation will not support a finding that there are prospects for a reconciliation. *McCoy* v. *McCoy,* 236 Ga. 633, 634, 225 S.E.2d 682 (1976); see *In re Dunn,* 13 Or. App. 497, 511 P.2d 427 (1973). A difference, to be irreconcilable, need not necessarily be so viewed by both parties. Id.; see *In re Marriage of Baier,* 39 Colo. App. 34, 561 P.2d 20 (1977) (evidence supported finding of irretrievable breakdown even though husband claimed strong attachment to wife and that difficulties could be resolved by counseling). We conclude that the defendant failed to demonstrate that the trial court abused its discretion in finding that the marriage had broken down irretrievably. See *Yontef* v. *Yontef,* 185 Conn. 275, 279, 440 A.2d 899 (1981).

The defendant also argues that the trial court abused its discretion in its orders with respect to the marital residence, the division of property, and alimony. " 'With respect to the financial awards in a dissolution action, great weight is given to the judgment of the trial court because of its opportunity to observe the parties and the evidence.' Moreover, 'the power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances which arise out of the dissolution of a marriage.' *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 585, 362 A.2d 835 (1975) . . . ." (Citations omitted.) *Holley* v. *Holley,* supra, quoting *Anderson* v. *Anderson,* 191 Conn. 46, 57, 463 A.2d 578 (1983). In making its financial awards, the trial court must consider the statutory criteria; General Statutes §§ 46b-81 and 46b-82; but it need not make express findings as to each one. *Carpenter* v. *Carpenter,* 188 Conn. 736, 740, 453 A.2d 1151 (1982); *Osborne* v. *Osborne,* 2 Conn. App. 635, 642, 482 A.2d 77 (1984). "It is free to weigh the relevant statutory criteria without having to detail what importance it has assigned to the various statutory factors. *Tutalo* v. *Tutalo,* 187 Conn. 249, 251–52, 445 A.2d 598 (1982)." *Katreczko* v. *Katreczko,* 1 Conn. App. 686, 688, 475 A.2d 323 (1984).

The memorandum of decision in this case indicates that the trial court properly considered and weighed the statutory factors in making its financial awards. As we have noted, in order to conclude that the trial court abused its discretion, we must find that the trial court either incorrectly applied the law or could not reasonably conclude as it did. *Holley* v. *Holley,* supra. The facts of this case do not warrant such a result.

The defendant's specific claims are that the trial court abused its discretion (1) in ordering her to pay the plaintiff $110,000 for his interest in the family home, (2) in awarding her only two 1977 Pinto automobiles from

the marital property and (3) in awarding her only $4500 per month in alimony. With respect to the order regarding the family residence, the trial court noted, in response to a motion for articulation filed by the defendant: "The Court may have misled the parties by indicating in its decision that . . . it arrived at an 80/20 percent distribution . . . based on the contributions the parties made . . . . The Court considered all the criteria set forth in the appropriate statute and reached its conclusion of 80/20 percent based on all the statutory criteria, not just the contributions by both parties." A review of the record, including the financial affidavits of the parties, indicates that the trial court could reasonably allocate $110,000 to the plaintiff for his interest in the family residence.

With regard to the division of property and award of alimony, we note that we do not review any single order without examining it in the context of all of the other orders as well as the assets and liabilities of both parties. *Wolk* v. *Wolk,* 191 Conn. 328, 333, 464 A.2d 780 (1983). Thus, we may properly consider the liabilities of the plaintiff, including the fact that at the time of trial, he was paying for the college education of one of the children. See id., 333. The financial affidavits reveal that both parties have considerable assets and liabilities. Because of the trial court's distinct advantage over this court in terms of its proximity to the parties and to the evidence which serves as a basis for alimony and property assignment decisions; *Gallo* v. *Gallo,* 184 Conn. 36, 50, 440 A.2d 782 (1981); only in rare cases will a disappointed litigant be able to demonstrate abuse of a trial court's broad discretion. *Yontef* v. *Yontef,* supra. On the basis of the evidence in this case, the trial court could reasonably conclude as it did.

There is no error.

In this opinion the other judges concurred.