[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
CT Page 7325
This is a suit for dissolution of marriage brought by the plaintiff husband against the defendant wife. The parties were married on October 12, 1968 in Trumbull, Connecticut. There are three children issue of the parties. The youngest, Susan and David, twins born on February 17, 1977, have just turned eighteen years of age and Jennifer, the oldest, is 21 years of age. Jennifer is in her junior year at Loyola University in Baltimore, Susan and David in their senior year at St. Joseph's High School and will graduate June 3rd. David is enrolled to enter Pratt Institute in Brooklyn in the fall and Susan is enrolled to enter Stonehill College in North Easton, Massachusetts.
The parties are both forty-eight years of age and both in good health. The plaintiff graduated from Notre Dame High School in 1964 and Providence College in 1968. The defendant graduated from Notre Dame High School presumably in 1965 and St. Vincent's School of Nursing with an associate's degree in 1967. She is a registered nurse and works part time for the Jewish Home for the Elderly and the Visiting Nurse Association. The plaintiff owns a one-third share in the old family business known as the Norwalk Vault Company.
The plaintiff's complaint alleges that the marriage has broken down irretrievably. The defendant has filed an answer denying that the marriage has broken down and filed a cross complaint in which she alleges in paragraph three as follows: "The parties are now separated however the Defendant does not believe the marriage is broken down irretrievably." The defendant does not claim a dissolution of the marriage, but claims custody of the two minor children, an assignment of estate, child support, alimony, counsel fees and "such other and further relief as may be consistent with equity and good conscience." In her "Claims for Relief", she carefully avoids any request for dissolution of the marriage, but seeks an assignment of estate, lump sum alimony and periodic alimony.
The plaintiff testified that he determined the marriage was broken down in 1989, but that for the sake of the children, he felt he should stay in the marriage until the children finished high school. In February, 1994, he moved out of the house and commenced this action in June, 1994. The plaintiff ascribes the breakdown to a lack of communication and fixes the breakdown to 1984 and 1985 when he was very depressed and felt the finances had "gotten out of hand."
The plaintiff started with Norwalk Vault in 1972. This was a business started by his grandfather in 1932. In 1978 he started CT Page 7326 purchasing his father's one-third interest in the business. He paid $360,000 for his father's share of the business over a ten year period.
In 1993, the plaintiff developed a relationship with one Eileen Parker, an employee of the business. They attended a computer course together at Fairfield University in September 1993. Upon cancellation of one of the classes, they had dinner together in October, 1993 and thereafter their relationship became a social one in addition to the business relationship. After the plaintiff left the marital home, their relationship became an intimate one and this relationship has continued to the present time.
The plaintiff has described the defendant as a good mother, a good wife, helpful in his career, and that through her care of the home and the children, he was permitted to work six days per week, ten hours per day. The defendant certainly contributed to the acquisition, preservation and appreciation in value of their respective estates. The defendant's homemaking activities must be considered in this respect.O'Neill v. O'Neill, 13 Conn. App. 300 (1988).
As previously noted, the defendant does not concede that the marriage has broken down irretrievably. The plaintiff has so testified. The plaintiff is now living with another. The following language from the case of Eversman v. Eversman, 4 Conn. App. 611 at page 614 best expresses the position of the Appellate Court with like facts: "The fact that the defendant maintains hope for reconciliation will not support a finding that there are prospects for a reconciliation . . . citations omitted . . . . A difference, to be irreconcilable, need not necessarily be so viewed by both parties."
The court finds that the marriage has broken down irretrievably. The court finds that that breakdown has been caused by the failure of communication between the parties resulting in the plaintiff's depression. The court finds that the plaintiff was the one at fault for this failure of communication. While the defendant has endeavored to place the fault on the plaintiff's relationship with Ms. Parker, the court finds that that relationship has been post breakdown and not the cause for the breakdown of the marriage.
Plaintiff's business does well. The plaintiff's gross income for 1994 from his employment amounted to $236,000. (See plaintiff's exhibit C.) In addition, the children as stockholders of Norwalk Burial Vault Company have received as much as $60,000 ($20,000 each which is, in reality, out of the plaintiff's share of the profits of the business) in one year. The plaintiff also has medical insurance without cost to him CT Page 7327 and the use of a company car.
The defendant works part time at the Jewish Community Center and for Visiting Nurse Association. While she has not inquired regarding full time work in either position, she is capable of working full time. She is concerned, however, regarding her qualifications for return to full time work even though she has taken several refresher courses in recent years. She did work full time the first three years of their marriage, and when she stopped working full time, she was Assistant Head Nurse and had been asked to be Head Nurse.
In July, 1994, the defendant's father died. The defendant will receive approximately $105,000 net after succession tax and fees as her share of her father's estate.
In evaluating the assets of the parties, the court has found the value of the Huntington home to be $317,000. It is subject to a mortgage for $53,000. The court finds the value of the plaintiff's business interest to be $333,333, as reported by the plaintiff in his financial affidavit. While the defendant has produced some evidence to indicate a higher value, this evidence has been incomplete and insufficient to permit the court to find a higher value. The plaintiff's interest is a one-third interest, his uncle and a son of another uncle owning the remaining two-thirds share of the business. The value of the business is substantially its value as an income source permitting the court to award a substantial sum of alimony to the defendant so that she may continue to live close to the lifestyle to which she has become accustomed.
The expenses of the defendant set forth in her financial affidavit are not helpful. A number of the items for household expenses appear extraordinary for the size of the family home. Some of these expenses are high because they include expenses for the twins who are presently living at home but whom will be away at college commencing in the fall. The defendant testified these expenses represented figures for the year 1993. This was the year when there were extraordinary expenses for the care and maintenance of the home and, to a certain extent, are nonrecurring items. The court believes that the defendant will return to full time work. If she does do so, she should be allowed a self-support reserve of a gross income of $60,000 exclusive of alimony before any showing of a substantial financial change of circumstance on her part.
In determining the proper orders in this case, the court must consider the factors set forth in § 46b-81 and § 46b-82 of the General CT Page 7328 Statutes together with the provisions of § 46b-62. With respect to alimony and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
As has been said by the appellate court in the recent case ofEmanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531 (1992):
 "General Statutes § 46b-81 (c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988) . . . .
 The statutory factors for determining alimony in § 46b-82 are almost identical to the factors used to distribute property in § 46b-81 (c)." CT Page 7329
The court has considered all of the criteria of §§ 46b-81 and 46b-82
together with § 46b-62 of the General Statutes, all of the evidence and the case law. Since "[i]t would serve no useful function to require the trial court ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weimanv. Weiman, 188 Conn. 232, 234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v. Parry,24 Conn. App. 307, 313-14 (1991).
In considering the division of property, the court is mindful of the net amount of the plaintiff's savings account at Lafayette Bank after payment of $18,000 by way of estimated income tax on June 15th and the $30,000 in an uncashed check in a recent company distribution.
In addition to the foregoing findings, the court finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There is an irretrievable breakdown of the marriage.
4. The plaintiff is at fault for the breakdown of the marriage.
The court orders as follows:
1. A decree of dissolution of marriage shall enter on the plaintiff's complaint on the ground of irretrievable breakdown of the marriage.
2. The plaintiff shall pay as alimony the sum of $5,000 per month, payable on the first day of each month, until the first to occur of the following events: the death of the plaintiff, or the death or remarriage of the defendant. This order of alimony may be subject to modification, suspension, reduction or termination pursuant to § 84b-86(b) of the General Statutes upon a showing that the defendant is living with another person under circumstances which cause such a change of circumstances as to alter her financial needs. CT Page 7330
3. The plaintiff shall quitclaim all of his right, title and interest in and to the marital residence located at 19 Elderberry Lane, Huntington, Connecticut, to the defendant, and she shall be wholly responsible for and indemnify and hold harmless the plaintiff upon the outstanding balance of the mortgage upon that property, the real property taxes and all other expenses incurred from the date hereof.
4. Each of the parties shall keep any automobiles in their respective names.
5. The jointly owned A.G. Edwards account shall be divided equally between the parties.
6. The jointly owned stock shall be divided equally between the parties.
7. The defendant shall be entitled to the entire inheritance from her father's estate.
8. The savings account at Lafayette Bank in the plaintiff's name, after payment of the $18,000 estimated tax due on June 15, 1995, shall be divided equally between the parties.
9. The profit sharing plan shall be divided equally pursuant to a Qualified Domestic Relations Order (QDRO), if necessary.
10. Each party shall keep his or her own checking account.
11. Each party shall keep his or her own Individual Retirement Account.
12. The plaintiff shall retain his one-third ownership in the family business known as Norwalk Vault Company free of any claim or demand by the defendant.
13. The plaintiff and defendant shall split equally any profit or loss from the two limited partnerships known as Carlisle and Balcor.
14. The defendant shall be entitled to the household furnishings and furniture except for the plaintiff's personal effects which he shall have the right to remove within a reasonable period of time.
15. The plaintiff shall name the defendant as beneficiary of $250,000 of life insurance for as long as he has an alimony obligation. The CT Page 7331 defendant shall assign and transfer the ownership of the IDA Life Insurance policy with a cash surrender value of $35,000 and payable upon death value of $69,000 to the plaintiff, which policy may be included in the payable upon death amount of $250,000. The plaintiff shall provide proof of the maintenance of such insurance and the maintenance of the defendant as irrevocable first beneficiary thereof within sixty (60) days of the date hereof and annually on July 1 of each year hereafter.
16. The plaintiff will cooperate in helping the defendant obtain COBRA coverage or its equivalent under the provisions of § 38a-538 of the General Statutes at her expense if she desires said coverage.
17. Each party shall be responsible for his or her own debts.
18. The parties shall use the presently existing funds for the children's education.
19. Each party shall be responsible for his or her own attorney's fees.
Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE