[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
BACKGROUND
This is an action for dissolution of marriage made returnable to the Danbury Judicial District. The matter was assigned for a limited contested dissolution trial and both parties appeared and were represented by counsel. Evidence and testimony was presented to the court on approximately sixteen trial dates or parts thereof from May 22, 2002. to July 9, 2002. The parties were then instructed to provide the court with trial briefs on or before September 20, 2002. The court then reserved decision.
From the date of filing of this case, the defendant was persistent in his claim that the court lacked jurisdiction to hear this matter and to render judgment. He was equally persistent in his claim that the plaintiff that the plaintiff lacked the necessary intent to proceed to a dissolution; that there was no marriage for the court to dissolve; and that the marriage had not broken down irretrievably. It was not clear to the court whether these claims were made cumulatively or in the alternative.
The defendant also argued that the statute which regulates dissolutions, Section 46b-40, C.G.S., is violative of the Establishment Clauses of both the United States Constitution and the Constitution of the State of Connecticut. Those claims were maintained by the defendant throughout the trial and on to the date of his filing of his trial brief which was captioned, "Memorandum of Defendant In Opposition To Dissolution. "
An additional impediment to these proceedings, according to the defendant, was the fact that the parties' prior action for dissolution of marriage, returnable to the Stamford Judicial District, was still pending in that court. The reason given was that the defendant's appeal to the Appellate Court from a trial court denial of his motion to vacate the CT Page 916 plaintiff's withdrawal of that action had yet to be decided. His claim was that this matter would be invalid if that matter were found to be still pending. That issue was resolved on December 31, 2002, when the Appellate Court affirmed the. ruling of the trial court. Grimm v. Grimm,74 Conn. App. 406 (2002).
Throughout the trial the defendant raised alternative arguments in opposition to the proceedings. On the one hand, the defendant maintained that the marriage of the parties was void and attempted to offer evidence that one or both of the plaintiff's prior marriages (one being a common law union) may not have been legally dissolved, divorced, annulled, or otherwise rendered null and void prior to the marriage of the parties.
On the other hand, the defendant offered, or attempted to offer, evidence and testimony to the effect that the plaintiff was mistaken or untruthful in her, belief, as evidenced by her sworn testimony, that the marriage of the parties had broken down irretrievably without hope of reconciliation. He refused to accept that fact and he and his counsel spent an extraordinary amount of time and effort in an attempt to impeach her testimony on that subject.
The defendant proffered the testimony of a least four witness who he described as "experts" on the subject of "irretrievable breakdown of a marriage." They were to be offered to testify that, in their professional opinion, the marriage of Beverly and Robert Grimm was not broken down irretrievably. None had ever met or interviewed the plaintiff The court sustained the plaintiff's objection to such testimony noting that was the ultimate issue for the court to decide and the subject was not one which the court felt it required expert testimony.
The defendant's motion for jury trial, motion for bifurcation and motion for continuance were each denied and the evidence and testimony began.
As previously noted, the court heard the evidence and testimony on diverse dates in May, June and July 2002 and briefs were filed on September 20, 2002.
The court has taken into consideration the provisions of Sections 46b-40,46b-50, 46b-81 and 46b-82, C.G.S. as well as related statutes in reaching the orders hereinafter set forth.
The evidence and testimony permits the court to make the following findings of fact as of the time of trial. CT Page 917
The plaintiff, whose maiden name was Beverly Lynn Lampp and the defendant were married at Mayfield, Ohio on May 29, 1983.
The plaintiff has resided in Connecticut for at least twelve months prior to the commencement of this action.
Neither party has been the recipient of welfare from the State of Connecticut.
There are no minor children who were born issue of this marriage.
The court has the requisite jurisdiction to proceed to judgment in this matter.
The marriage of the parties has broken down irretrievable without any hope of reconciliation.
The plaintiff, at the time of trial, was fifty-two years old, having been born on August 24, 1949. She enjoys generally good health. She is employed at G.E. Capital in Stamford as a quality trainer. She has held that position since October 2001 and has been a G.E. employee for 22 years. Her present position involves teaching G.E.'s quality methodology to G.E. quality specialists.
The plaintiff has a master's degree in mathematics from the University of Colorado and. another in business administration from Case Western Reserve. She also has a bachelor's degree in mathematics from the University of West Florida.
The defendant is fifty-four years old, having been born on May 27, 1948 and is in generally good health. He holds a bachelor's degree in mathematics from Case Tech and an MBA from Case Western Reserve University.
The defendant is a former computer consultant and partner with Arthur Anderson. He was later employed by G.E. Capital as chief information officer (CIO). In 1995 he left that position and was employed by ISO until approximately March 1998. He has not held a full time position since that time.
As CIO of G.E. Capital, his average gross income was between $400,000.00 and $500,000.00 per year. At the time of trial, his financial affidavit disclosed that his average weekly income consists of interest and dividends in the amount of $340.00 and a distribution from an IRA in the approximate amount of $4,509.00, for a total net weekly income of CT Page 918 approximately $4,849.00 On that same financial affidavit he reported total liabilities in the amount of $785,579.00, approximately $582,000.00 of that purportedly being taxes owed to the IRS and to the State of Connecticut. There was little or no testimony to corroborate those liabilities.
The parties were first separated in 1988 when the plaintiff left their marital residence in Ohio and commenced an action for divorce in that state. She later withdrew that action after the defendant repeatedly failed to appear at court hearings or to plead, other than to contest the plaintiff's claim of irreconcilable differences. The plaintiff eventually withdrew that action and seek a divorce on the grounds of living separate and apart from the defendant for one year. That effort ended when the plaintiff was involved in a car fire and the defendant befriended her. The parties resumed cohabitation, but in 1992 the plaintiff once again commenced a divorce action. In 1993, while that action was pending, the defendant accepted his position with G.E. Capital in Connecticut. The plaintiff withdrew the divorce and resumed cohabiting with the defendant hoping that "with a new job, a new city and a new state that he would change his behavior and things would be better." The parties moved to their New Canaan home in February 1993.
In August 1997 the plaintiff commenced an action for dissolution of marriage in the Stamford Superior Court. She testified that she could no longer tolerate the treatment she was receiving from the defendant. She testified that he was cruel, cold and aloof, immoral and hypocritical. His offensive behavior included watching "pornographiC' television programs. She further testified that he sexually harassed her by walking around the house naked against her request and by making uninvited and unwanted sexual advances on her while he was naked-despite her repeated representations to him that she wanted no sexual contact of any kind from him.
 In January 1998, the plaintiff once again left the marital residence and never returned. She testified that the defendant had began taking various personal effects of hers including a watercolor which was a gift from her daughter and a number of pieces of her jewelry, including her engagement and wedding rings-which he never returned.
The plaintiff removed herself to Danbury with only a few personal possessions.
In December 2000, the plaintiff filed a withdrawa[1] of the Stamford dissolution action and commenced the instant action in Danbury Superior Court. CT Page 919
Ironically, each of the parties has cited the plaintiff's commencement and withdrawal of four different actions for divorce or dissolution for their own purpose.
The defendant argues that that pattern of behavior, albeit it over the course of about 14 years, is evidence of the fact that the plaintiff is incapable of forming the requisite intent to seek a dissolution of marriages and, also, that she is mistaken or dishonest when she claims that she believes that the marriage has broken down irretrievably.
On the other hand, the plaintiff maintains that those same facts evidence the repeated unsuccessful attempts by her to keep the marriage together. It also evidences the persistent campaign by the defendant to frustrate her efforts to end the marriage as shown by the numerous stays, postponements, continuances, depositions, motions and other practices she believes are purely dilatory and tactical-as opposed to conciliatory. She testified that the defendant had warned her that should she attempt to end the marriage he would "drag out" any such litigation and cause her to spend "$100,00.00" for counsel fees-unless she were to stipulate to give him 80% of the marital assets.
As between the two versions, in view of the evidence, the court finds the plaintiff's version to be the credible one.
While the case was slowly working its way to the trial docket over two years, the defendant spent large sums of money for personal expenses (approximately $400,000.00 per year) while making no meaningful effort to obtain employment commensurate with his education, work history and skills. The testimony permits the court too find that in the years from 1998 to 2002, the defendant earned approximately $311,000.00 and the marital assets were reduced by approximately $2.9 million dollars. This was a result of the defendant's liquidation of retirement funds and his expenditure of approximately $700,000.00 for charities and an addition $1.1 million for counsel fees in conjunction with the dissolution proceedings. It was not possible to make a more specific finding regarding his financial transactions because of his failure to comply with certain discovery requests.
The court finds that the amount of attorney's fees, even in a case involving sizeable assets, is excessive in light of the lack of complex of issues.
Likewise, the extent of the charitable gifts paid out by the defendant at a time when there are automatic orders prohibiting wholesale CT Page 920 reductions in the marital assets is inexcusable
While it is undeniable that the downturn in the stock market resulted in the shrinkage of the parties assets, that does not include the sale or transfer of approximately 40,600 shares of G.E. stock without permission of the court and without the knowledge and consent of the plaintiff
The court finds that the defendant has failed to earn income commensurate with his skill and talent and, in addition, he has seriously and inexcusably diminished the asset picture of the parties.
The plaintiff, on the other hand, has made no appreciable reduction in the marital assets and has made sizeable contributions to those funds.
During the years 1998 to 2002 she contributed approximately $970,00.00 to the assets of the parties, or for reasonable and necessary expenses. Her contributions to charities over that period was approximately $177,000.00 and she paid out approximately $233,000.00 in counsel fees.
She also acquired various assets after her separation from the defendant for which he can take no credit for nor make a claim for as part of the distribution of assets. See Bornemann v. Bornemann,,,245 Conn. 508, 537 (1998). They include G.E. Stock Option awards; G.E. Savings and Security Program 401K contributions; accumulation in G.E. Stock Direct (DRIP) account; People's Bank Account accumulation; 1999 Toyota automobile, ELFUN Mutual Funds accumulation, equity payments on real property at 4 Whippoowill Road Bethel.
In addition to negatively impacting the asset picture, the defendant has been the principal cause of the breakdown of the marriage.
In the instant action, the plaintiff was sworn and testified. Within three minutes of taking the stand, she testified that the marriage had broken down irretrievably. She also testified that the defendant was "very cold . . . distant . . . aloof . . . abusive . . . cruel . . . has repeatedly abandoned me . . . secretive . . . immoral . . . hypocritical . . . dishonest and controlling."
She testified to the conduct of the defendant which permitted her to make those accusations. Some of the acts included inappropriate and unwanted sexual advances, meanspirited discipline of the plaintiff's daughter, exposing himself in the presence of the adolescent daughter, watching television programs featuring nudity over the plaintiff's objections, larceny of plaintiff's personal effects and a number of other examples of what the plaintiff considered to be unacceptable conduct. CT Page 921
The defendant persisted in his argument that, taken one at a time, the complaints of the plaintiff did not establish that the marriage had broken down irretrievably.
In 1973, before "no fault" dissolution was permitted by statute, a plaintiff had to proceed on one of a number of "fault" grounds (e.g. habitual intemperance, intolerable cruelty, adultery, abandonment, etc.) and had to provide corroborating evidence and testimony from at least one other witness. While traditional "fault" grounds are still permissible grounds under Section 46b-40 C.G.S., only a minute number of the thousands of dissolutions filed each year in this state use those grounds.
Section 46b-40 (c), C.G.S. was amended to include as a ground for dissolution, "(1) The marriage has broken down irretrievably."
"Any evidence which bears upon the validity of the marriage is admissible whether it be classified as objective or subjective. The determination of whether a breakdown of a marriage is irretrievable is a question of fact to be determined by tntershe trial court. Joy v. Joy,178 Conn. 254.255 (1979).
The fact that the defendant maintains hope for reconciliation will not support a finding that there are prospect for reconciliation" "A difference, to be irreconcilable, need not necessarily be so viewed by both parties. Eversman v. Eversman, 4 Conn. App. 611, 614 (1985).
Having made the foregoing findings of fact, the court enters the following orders:
REAL ESTATE
The defendant shall convey all of his right, title and interest and and to the marital residence located at 252 Hickok Road, New Canaan, Connecticut, subject to the existing mortgages. The defendant shall vacate the premises forthwith.
The plaintiff shall convey to the defendant all of her right, title and intrest and and to the real property located at 510 Locklie Drive, Highland Heights, Ohio, which is conveyed to the defendant subject to all existing mortgages which the defendant shall be solely responsible for and for which he shall hold the plaintiff harmless.
The plaintiff shall retain her interest in and to the real property CT Page 922 located at 4 Whippoorwill Road, Bethel, Connecticut.
PERSONAL PROPERTY
The plaintiff shall retain the following assets listed on her financial affidavit:
People's Bank savings account; 1999 Toyota Corolla; General Electric stock (General Electric Stock Direct); Money Concepts Capital Corp. account; General Electric stock options; Hartford Life Annuity; Elfun mutual funds; (trust, tax exempt and money market); G.E. 1991 Executive Deferred Salary Plan; G.E. Savings and Security program (401K); G.E. stock IRA; G.E. pension; Key Bank IRA; Merrill Lynch IRA.
The defendant shall retain the following personal property set forth on his financial affidavit:
 "93 Lexus SC400; "98 JaguarXK8; "88 Jaguar; "74 Jaguar XKE; Fleet Bank checking; Parkview checking; G.E. stock; Accenture (ACN) stock; ET stock; Phillip Morris (MO) stock; PGR stock; ISO stock; Disney (DIS) stock; Individual IRA's; Deferred Compensation.
The plaintiff is awarded the personal property set forth on the Plaintiff's Requested Personal Property including items to be left by defendant at 252 Hickok Road, New Canaan, Connecticut property.
ALIMONY
The defendant shall pay to the plaintiff lump sum alimony in the amount of $100,000.00 with in 90 days of the date of this judgment.
COUNSEL FEES
The defendant shall pay to the plaintiff the sum of $100,000.00 as a contribution to the counsel fees incurred by her as a result of this action within 60 days of the date of this judgment.
Having found that the marriage of the parties has broken down irretrievably, the hereby decrees that the marriage of the parties is dissolved and they are single and unmarried.
By the Court
Joseph W. Doherty, Judge